**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

**Dated: 11:48 AM November 18, 2013**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) CHAPTER 7 |
| | ) |
| MARTIN L. MYERS, | ) CASE NO. 11-61426 |
| | ) |
| Debtor. | ) ADV. NO. 13-6065 |
| _____ | ) |
| ANTHONY J. DEGIROLAMO, | ) JUDGE RUSS KENDIG |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) **MEMORANDUM OF OPINION (NOT** |
| DEVONSHIRE FUND, LLC, et. al., | ) **INTENDED FOR PUBLICATION)** |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

Now before the court is defendants Devonshire Fund, LLC, Devonshire Fund Group, LLC and DFG-Amberwood, LLC's (collectively "Defendants") motion to dismiss filed on June 26, 2013.

The court has jurisdiction over this case pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district on April 4, 2012. Venue in this district and division is

1

proper pursuant to 28 U.S.C. § 1409. One portion of this proceeding is core under 28 U.S.C. § 157(b)(2)(O), while other portions are noncore.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

Trustee claims that Defendants have engaged in prohibited actions with Debtor and/or concerning Debtor's former property. The court notes that although the allegations are particularly thin in some areas, they are sufficient to withstand a motion to dismiss on all counts.

## Facts

On April 29, 2011, Martin L. Myers ("Debtor") filed a voluntary chapter 7 bankruptcy petition. Nearly two years later, on April 28, 2013, Anthony J. DeGirolamo, the chapter 7 trustee ("Trustee"), filed a complaint ("Complaint") against Defendants, as well as multiple other parties. Trustee asserts the following claims in the Complaint: (1) Defendants engaged in prohibited post-petition transactions; (2) Defendants refused to turn over property of the estate; (3) Defendants were unjustly enriched; (4) Defendants converted property of the estate; and (5) Defendants engaged in civil conspiracy. Defendants have objected to each of the above claims and have filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 7012.

Debtor was the founder and CEO of Martin Design, Inc. ("MDI"). In 2003, Debtor sold the majority of his shares in MDI to MD Acquisitions, LLC ("MDA") for several million dollars. Approximately two years later, on September 26, 2005, state court litigation surrounding the sale of MDI began. In the action, MDA alleged that Debtor: (1) breached the stock purchase agreement entered into with MDA; (2) breached the employment agreement with MDI; and (3) misappropriated MDI's trade secrets and business opportunities. Over five years after the start of litigation, on March 1, 2011, a state court entered judgment in the amount of $20,020,828 against Debtor. Shortly thereafter, on April 29, 2011, Debtor filed a voluntary Chapter 7 bankruptcy petition.

Before the filing of the bankruptcy petition, but during the state court action, Amberwood Center, Ltd. ("Amberwood"), an entity wholly owned by Debtor, sold a shopping center in Ashland, Ohio called the Amberwood Plaza ("Plaza") to BBC Holdings 49, LLC ("BBC"). The sale of the Plaza from Amberwood to BBC resulted in Amberwood receiving $4,500,000 in cash, a $1,000,000 promissory note ("Note"), and a maintenance agreement ("Maintenance Agreement") to be completed by another of Debtor's entities, Double M Limited ("Double M"), for snow removal, trash removal, lawn maintenance, and other associated services at the Plaza. BBC eventually defaulted on its loan with the primary Plaza lender and a foreclosure action was commenced. The foreclosure ended on October 10, 2010, with Defendants purchasing the Plaza free and clear of all prior liens, including all of Debtor's interests in the Plaza.

The above facts are not in dispute. However, the following two paragraphs, which form the basis of the litigation, contain hotly contested allegations.

Trustee alleges that when Defendants purchased the Plaza, Defendants agreed to assume the Note and Maintenance Agreement, to convert the Note and Maintenance Agreement to other types of property payable at the Debtor's request, or enter into equivalent new obligations, all in consideration for Debtor's assistance with the Plaza foreclosure, or potentially some other form of consideration. Trustee claims that the amounts payable under the Note and Maintenance Agreement have not been received by the bankruptcy estate. To support these allegations Trustee provides an invoice for services performed under the Maintenance Agreement from Double M to Defendants dated March 31, 2011, well after the Plaza foreclosure. Trustee argues that the invoice supports his argument that Defendants assumed, converted, or created a new obligation to Debtor similar to the Maintenance Agreement present before the Plaza foreclosure. Trustee also provides another invoice to Defendants under the Maintenance Agreement, also dated March 31, 2011, but this invoice is from Debtor's wife, Karen Myers, and not Double M. Trustee argues that the two invoices support his argument that Defendants and Debtor entered into the Maintenance Agreement, then funneled assets away from Double M, which is under Debtor's control, to Debtor's wife, in order to hide assets from Trustee. Regarding the Note, Trustee provides hand-written notes from Scott Snow ("Snow Notes"), Debtor's financial manager, which indicate that the purchaser of the Plaza, who turned out to be Defendants, planned on assuming the Note, with interest, and making those payments to Debtor. Trustee also includes an email between Snow and Tri State Capital Bank ("Snow Email") indicating that the buyer of the Plaza was required to pay Debtor's loan and that Debtor expected to receive $750,000 on the Note within sixty days of January 5, 2011. Trustee believes that the Snow Notes and Snow Email show: (1) Defendants assumed, converted, or entered into a new and equivalent Note; (2) Defendants paid $250,000 of the $1,000,000 total value before January 5, 2011; and (3) Defendants were planning on paying the balance of the Note in early 2011. Trustee also indicates that the payments evidenced in the Snow Notes and Snow Email were never received by the bankruptcy estate. Trustee also alleges that Debtor listed the value of the Note on his personal financial statements in August of 2009, but by March of 2011 the Note had been removed from those statements. Trustee believes the removal of the Note suggests Debtor is attempting to hide assets from Trustee. Trustee also provides bank information showing a wire transfer from Defendants to Debtor in the amount of $25,000 on October 24, 2011. Trustee believes that the $25,000 payment was associated with services Debtor rendered to Defendants for the Plaza foreclosure. Trustee also alleges a series of $10,000 monthly payments from Defendants to Debtor beginning around the end of 2011. In summary, Trustee alleges that Defendants either assumed, converted, or entered into a new Note and Maintenance Agreement with Debtor. Debtor then transferred his interests in the Note and Maintenance Agreement to other parties with the assistance of Defendants. Since the time of such a transfer, Defendants have made payments to Debtor and other parties at Debtor's request, but no payments have been made to Trustee. Trustee's five claims against Defendants stem from the above allegations.

Defendants filed a motion to dismiss Trustee's complaints pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 7012, on June 26, 2013. Defendants' main argument is that Trustee's pleadings are insufficient under Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Defendants admit that they initially negotiated the purchase of the Plaza with Debtor, but argue that once they became aware that the Plaza was in foreclosure they cut off talks with Debtor and instead negotiated with the foreclosure receiver. Defendants and Trustee both agree

that the foreclosure sale cut off Debtor's interest in the Plaza. In direct opposition to Trustee however, Defendants assert that they did not assume, convert, or enter into any new agreements with Debtor. Defendants believe Trustee has made only conclusory allegations of agreements between Debtor and Defendants, lacks evidence of any agreements, and that the complaint has not made a "plausible" claim under Twombly and Iqbal. Therefore, Defendants' argument is that Trustee has only provided conclusory allegations without sufficient evidence which fails to "state a claim to relief that is plausible on its face," entitling Defendants to dismissal. Iqbal, 556 U.S. at 678.

The above allegations are set out over a number of filings. Trustee filed the initial complaint on April 28, 2013 and then amended that complaint with changes immaterial to Defendants on August 30, 2013. Defendants filed their motion to dismiss on June 26, 2013. Trustee responded to Defendants' motion to dismiss on August 7, 2013. Defendants then submitted a reply in support of their motion to dismiss on August 28, 2013, which was followed by Trustee's surreply to Defendants' motion to dismiss filed on September 18, 2013. In the midst of these volleys, Defendants noted that the amendments to the complaint did not impact the issues raised and the briefing continued. Defs.' Mot. Dismiss Trustee's Am. Compl. 2, ECF No. 60.

## Law and Analysis

Trustee and Defendants each raise a number of arguments as to why Defendants either are or are not entitled to dismissal. However, before this court reaches the merits of the case, the extent of bankruptcy jurisdiction must be determined.

### I. Bankruptcy Court Jurisdiction

While neither party has raised an objection to this court's jurisdiction, federal courts are under an independent obligation to determine their own jurisdiction. Johnston v. City of Middletown (In re Johnston), 484 B.R. 698, 705 (Bankr. S.D. Ohio 2012) ("[F]ederal courts have an independent obligation to investigate and police the constitutional and statutory limits of their own jurisdiction"). Additionally, bankruptcy courts, like all federal courts, are courts of limited jurisdiction that are only able to hear a case if Congress has provided jurisdiction by statute. Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995); Mich. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.), 930 F.2d 1132, 1137 (6th Cir. 1991). Therefore, the court must determine if it has subject matter jurisdiction over Trustee's claims. If this court determines it has subject matter jurisdiction, the next inquiry is whether Trustee's claims are core, allowing the court to enter final judgment, or if the claims are noncore, where this court will instead propose findings of fact and conclusions of law to the federal district court. 28 U.S.C. § 157. Even if an issue is core, a bankruptcy judge may not be able to enter a final order based on Stern v. Marshall, 131 S. Ct. 2594 (2011). Each issue will be addressed in turn.

#### a. Subject Matter Jurisdiction

Before a federal court is able to hear a case it must have subject matter jurisdiction. Under 28 U.S.C. § 1334(b), federal district courts have subject matter jurisdiction over "all civil

proceedings arising under . . . or arising in or related to cases under [the bankruptcy code]." Thickstun Bros. Equip. Co., Inc. v. Encompass Servs. Corp. (In re Thickstun Bros. Equip. Co., Inc.), 344 B.R. 515, 520 (B.A.P. 6th Cir. 2006). District courts "routinely refer" bankruptcy cases to the bankruptcy courts under 11 U.S.C. § 157(a). Id. The jurisdictional grant to federal district courts has continually been interpreted broadly. For example, the Sixth Circuit determined that the "extraordinarily broad" wording of § 1334(b), along with legislative history, left "no doubt that Congress intended to grant to the district courts broad jurisdiction in bankruptcy cases." Lindsey v. O'Brien, Tanski, Tanzer & Young Heath Care Providers of Conn. (In re Dow Corning Corp.), 86 F.3d 482, 489 (6th Cir. 1996). Similarly, the Supreme Court decided that Congress intended "to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." Celotex, 514 U.S. at 308.

The jurisdictional statute lists four different types of proceedings that fall within bankruptcy subject matter jurisdiction: "(1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, (4) and proceedings related to a case under title 11." In re Wolverine Radio, 930 F.2d at 1141 (internal quotation marks omitted). The first category is only applicable for the bankruptcy petition itself as filed under §§ 301, 302 or 303. Id. It is not necessary to distinguish between the second, third, and fourth categories, as they "operate conjunctively to define the scope of [bankruptcy] jurisdiction." Id. Therefore, as "related to" jurisdiction is the most broad of the three categories, for a matter to fall within a bankruptcy court's subject matter jurisdiction "it is necessary only to determine whether a matter is at least 'related to' the bankruptcy." Id.

The Supreme Court and the Sixth Circuit have expansively read "related to" jurisdiction by adopting the Pacor test. Celotex, 514 U.S. at 308; In re Wolverine Radio, 930 F.2d at 1142. The Pacor test states that an action is "related to" a bankruptcy if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Pacor, Inc. v. Higgins (In re Pacor), 743 F.2d 984, 994 (3rd Cir. 1984) (emphasis omitted). Therefore, an action is sufficiently related "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." Id. The Sixth Circuit has limited Pacor's conceivability language by noting that "an extremely tenuous connection to the [bankruptcy] estate would not satisfy [§ 1334(b)]," but has provided little guidance on what such a remote connection might be. Robinson v. Mich. Consol. Gas Co. Inc., 918 F.2d 579, 583 (6th Cir. 1990).

In applying the Pacor test, courts in the Sixth Circuit have found that any case attempting to recover property for the benefit of the bankruptcy estate satisfies "related to" jurisdiction. French v. Johnson Law Grp. (In re Kohlenberg), 2012 WL 3292854, at *3 (N.D. Ohio 2012) (holding that a state law unjust enrichment claim is related to the bankruptcy case because "any recovery would be an asset available for distribution by [Trustee] to creditors"). Additionally, allegations of joint illegal conduct by a debtor and non-debtor will give the bankruptcy court subject matter jurisdiction against both parties. Kelley v. Nodine (In re Salem Mortg. Co.), 783 F.2d 626 (6th Cir. 1986) (holding that the bankruptcy court had subject matter jurisdiction over class action litigation against a group of mortgage lenders for violating lending laws, even

5

though all of the mortgage lenders in the class action had not filed for bankruptcy). An action need not even be against the debtor or his property, as a suit between third parties that would conceivably have an effect on the bankruptcy proceeding satisfies Pacor. Fisher v. Apostolou, 155 F.3d 876, 882 (7th Cir. 1998) (holding that a third party's claim against a defendant was "related to" a bankruptcy case when the third party's action, if successful, would exhaust part of the defendant's limited pool of money that the trustee was also trying to recover from); see also In re Wolverine Radio, 930 F.2d at 1142–44 (holding that an action between third parties was related to a bankruptcy case when one of the third parties had an indemnification contract with the debtor that entitled the third party to recover if he lost the case).

In the current case, Trustee has raised five claims against Defendants. The claims are for (1) unauthorized post-petition transactions, (2) failure to turnover estate property, (3) conversion of estate property, (4) unjust enrichment, and (5) civil conspiracy. While the claims are not against Debtor, that does not prohibit a finding of "related to" jurisdiction. CH Holding Co. v. Miller Parking Co., 903 F. Supp.2d 551, 555–56 (E.D. Mich. 2012); In re Wolverine Radio, 930 F.2d at 1142–44. The case at bar is similar to In re Kohlenberg, where the court held that the possibility of recovery from a third party for the benefit of the bankruptcy estate satisfies "related to" jurisdiction. 2012 WL 3292854, at *3. As each of Trustee's actions against Defendants seeks to recover property for the benefit of the bankruptcy estate that will then be used to pay creditors, "related to" jurisdiction under Pacor is satisfied for each of Trustee's claims. See id.

    b. **Determining Core or Noncore Status and Constitutional Bankruptcy Jurisdiction**

Because this court has subject matter jurisdiction, the next step is to determine if Trustee's claims against Defendants are core or noncore. Bankruptcy courts have varying levels of authority to enter final judgments based upon an issue being classified as "core" or "noncore" under bankruptcy law. 28 U.S.C. § 157. Under the United States Code, in a core proceeding the bankruptcy judge "may enter appropriate orders and judgments," but such judgments are subject to appellate review by the federal district court. Id. § 157(b)(1). However, in noncore proceedings, instead of entering an order, the bankruptcy judge "shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after . . . reviewing de novo" Id. § 157(c)(1).

Although what is a "core" or "noncore" proceeding is not defined by the bankruptcy code, Congress has created a non-exhaustive list of actions that are core to a bankruptcy case. Examples of actions that are statutorily core under the bankruptcy code are:

> (A) matters concerning the administration of the estate; . . . (E) orders to turn over the property of the estate; . . . (H) proceedings to determine, avoid, or recover fraudulent conveyances . . . [and] (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims . . . .

6

Id. § 157(b)(2). The non-exhaustive list led the Sixth Circuit to determine that a matter is core, even if not specifically listed in § 157, if it "either invokes a substantive right created by federal bankruptcy law or one which could not exist outside of the bankruptcy." Waldman v. Stone, 698 F.3d 910, 921–22 (6th Cir. 2012). In other words, a case is core if it is specifically listed in § 157, "arises under" the bankruptcy code, or "arises in" a bankruptcy case. Amedisys, Inc. v. Nat'l Century Fin. Enter., Inc. (In re Nat'l Century Fin. Enter., Inc.), 423 F.3d 567, 574 (6th Cir. 2005). A claim is noncore if it is only "related to" a bankruptcy case. Id.

Even after reviewing § 157 in its entirety, what claims "arise under" or "arise in" a bankruptcy case is not immediately clear. A claim satisfies the "arising under" language if the claim "describes those proceedings that involve a cause of action created or determined by a statutory provision of [the bankruptcy code]." In re Wolverine Radio, 930 F.2d at 1144. For example, in Rahl v. Bande, 316 B.R. 127, 131–32 (S.D.N.Y. 2004), the court found that a trustee's action to recover a fraudulent transfer under 11 U.S.C. § 544(b)(1) satisfied the "arising under" language, because without the bankruptcy code's grant of authority the trustee would have lacked standing to assert an individual creditor's fraudulent transfer claim. See also XL Sports, Ltd. v. Lawler, 49 F. App'x 13, 21 (6th Cir. 2002). The "arising in" language includes proceedings that "by their very nature, could arise only in bankruptcy cases." In re Wolverine Radio, 930 F.2d at 1144. Examples of items "arising in" a bankruptcy case are "administrative matters, orders to turn over property of the estate and determinations of the validity, extent, or priority of a lien." Stoe v. Flaherty, 436 F.3d 209, 216 (3rd Cir. 2006). If a matter is not listed in § 157 and does not "arise under" or "arise in" a bankruptcy case, it is not a core proceeding. Id. The court will now address the core/noncore status of each of Trustee's claims.

Trustee's first claim for the recovery of unauthorized post-petition transfers is a core proceeding. Such an action is based on § 549 of the bankruptcy code, which allows a trustee to avoid certain transfers made after the commencement of a bankruptcy case, and therefore "arises under" the bankruptcy code. Additionally, proceedings to recover unauthorized post-petition transactions fall under § 157(b)(2)(O), and therefore are core. United Sec. & Commc'ns, Inc. v. Rite Aid Corp. (In re United Sec. & Commc'ns, Inc.), 93 B.R. 945, 956–57 (S.D. Ohio 1988); Walker v. Motivation Consultants, Inc. (In re Gerlinger), 2008 WL 3992140, at *1 (Bankr. N.D. Ohio 2008). Section 157(b)(2)(O), deemed a "catch all" provision, brings "other proceedings affecting the liquidation of the assets of the estate" within core bankruptcy jurisdiction. 28 U.S.C. § 157(b)(2)(O). As unauthorized post-petition transactions are not explicitly listed within § 157, section (O) is used to make such actions core. However, state-law actions, which happen to fall within the broad wording of a catch all provision, are more accurately described as noncore related proceedings. In re United Sec. & Commc'ns, 93 B.R. at 957. Therefore, even if an action falls within the literal wording of § 157(b)(2)(O), such an action must still "arise in" or "arise under" the bankruptcy code before it is a core proceeding. See id. In the current case, the action to recover a post-petition transfer is based on § 549 and is a type of action that can only arise in a bankruptcy proceeding, making the claim core. See id. The majority of cases agree, holding that unauthorized post-petition transfer claims are core. See, e.g., In re Gerlinger, 2008 WL 3992140, at *1; Steed v. Knox Forex Grp., LLC (In re Rivas), 2009 WL 2929424, at *4 (Bankr. E.D. Tenn. 2009); EWI, Inc. v. Volvo GM Heavy Truck Corp. (In re EWI, Inc.),1997 WL 811693, at *3 (Bankr. N.D. Ohio 1997).

An action for unjust enrichment is an equitable theory of recovery molded by Ohio case law, not the bankruptcy code. See Hummel v. Hummel, 133 Ohio St. 520, 528 (1938); Norton v. City of Galion, 60 Ohio App.3d 109, 110 (Ohio App. 3d 1989). In the current case, Trustee argues that Defendants received assets from Debtor and retained the benefit when it would be unjust to do so. Because Trustee's claim for unjust enrichment invokes a substantive right created by Ohio law, and not the bankruptcy code, it is noncore. See In re Kohlenberg, 2012 WL 2745464, at *3. The weight of authority also holds that unjust enrichment claims are noncore. See e.g., id.; Loomis Elec., Inc. v. Lucerne Prods., Inc., 225 B.R. 381, 386 (N.D. Ohio 1998); Hankin v. Auxillary of the Winsted Mem'l Hosp. (In re Winstead Mem'l Hosp.), 236 B.R. 556, 561 (Bankr. D. Conn. 1999) (cited favorably by In re Kohlenberg, 2012 WL 2745464, at *3).

A claim for conversion is based on state law, not the bankruptcy code. Johnson v. Fifth Third Bank, Inc., 476 B.R. 493, 503–04 (W.D. Ky. 2012). In the current case, Trustee argues that Defendants have wrongfully exercised dominion over property that rightly belongs to the bankruptcy estate. While such an action is similar to a fraudulent conveyance action, "similarities between a core claim and a non-core claim do not create bankruptcy jurisdiction." Krasny v. Bagga (In re Jamuna Real Estate, LLC), 357 B.R. 324, 332 (Bankr. E.D. Penn. 2006). Trustee's claim for conversion does not "arise under" or "arise in" the bankruptcy code, but instead is based on an Ohio law that can exist outside of a bankruptcy proceeding, making the claim noncore. Johnson, 476 B.R. at 503–04. The weight of authority holds that conversion claims are noncore. See, e.g., Slone v. M2M Int'l, Inc. (In re G-P Plastics, Inc.), 320 B.R. 861, 866 (E.D. Mich. 2005); In re Jamuna Real Estate, 357 B.R. at 332 (collecting cases).

A claim of civil conspiracy is also a state law claim that can exist outside a bankruptcy case. Kenty v. Transamerica Premium Ins. Co., 650 N.E.2d 863, 866–67 (Ohio 1995); Nickless v. Haws & Mill St., Inc. (In re Fusco), 2013 WL 2477268, at *7 (Bankr. D. Mass. 2013) (Conspiracy actions "are not creatures of bankruptcy law; they are state law claims which easily may exist outside the realm of a bankruptcy court"). In the current case, Trustee argues that Defendants, along with other parties, acted in concert to defraud the bankruptcy estate. Such an action does not "arise in" or "arise under" the bankruptcy code, but instead is only "related to" a bankruptcy case. The weight of the authority supports the court's conclusion that civil conspiracy claims are noncore. See, e.g., Morrison v. Amway Corp. (In re Morrison), 409 B.R. 384, 290 (S.D. Tex. 2009); Official Comm. of Unsecured Creditors of Wickes Inc. v. Wilson, 2006 WL 1457786, at *5 (N.D. Ill. 2006); Hays v. Equitex, Inc. (In re RDM Sports Grp., Inc.), 260 B.R. 915, 919 (Bankr. N.D Ga. 2001); Hudgins v. Shah (In re Systems Eng'g & Energy Mgmt. Assocs., Inc.), 252 B.R. 635, 648 (Bankr. E.D. Va. 2000).

The most difficult claim to classify is Trustee's turnover claim. However, before this court delves into the core/noncore nature of a turnover claim, the constitutional limits on bankruptcy jurisdiction under Stern v. Marshall, 131 S. Ct. 2594, must be explored. In Stern, the Supreme Court noted that federal judges appointed under Article III of the United States Constitution are guaranteed life tenure and a salary not to be decreased, which are two "inseparable element[s] of the constitutional system of checks and balances that both defines the power and protects the independence of the Judicial Branch." Stern, 131 S. Ct. at 2608. Bankruptcy judges lack these same protections. Waldman, 698 F.3d at 917. Therefore "Congress may not withdraw from [an Article III judge] any matter that was the subject of a suit at common

8

law, or in equity, or admiralty" and give it to a bankruptcy judge. Stern, 131 S. Ct. at 2609 (internal quotation marks omitted); see also Waldman, 698 F.3d at 917. The Sixth Circuit has summarized constitutional bankruptcy jurisdiction after Stern as follows: when an individual has pled an action that either "arises in" or "arises under" bankruptcy law, the bankruptcy court can enter final judgment. "But when [an individual] pleads an action arising only under state-law . . . or when [an individual] pleads an action that would augment the estate, but not necessarily be resolved in the claims allowance process, then the bankruptcy court is constitutionally prohibited from entering final judgment." Waldman, 698 F.3d at 919 (internal citations omitted). Therefore, even if an action is "core" under § 157, the action must still either "arise in," "arise under," or be resolved within the claims allowance process before a bankruptcy judge can constitutionally enter final judgment. See id.

Continuing with the turnover action, § 157(b)(2)(E) of the bankruptcy code states that "orders to turn over property of the estate" are core. The vast majority of cases filed within the Sixth Circuit after Stern have held that turnover actions are core and can be decided by a bankruptcy judge. See e.g., French v. Butler (In re Brady), 2013 WL 4453039 (Bankr. N.D. Ohio 2013) (holding that a turnover action seeking recovery of a liquidated debt that is property of the bankruptcy estate is a core proceeding); Barbacci v. Marshall Buck Financial Grp. (In re Olson), 2013 WL 1222599 (Bankr. N.D. Ohio 2013) (finding core jurisdiction for a turnover claim where disputed issues of law existed, but without disputed issues of material face); Shapiro v. Harajli (In re Harajli), 469 B.R. 274 (Bankr. E.D. Mich. 2012) (same). Before Stern, many courts in the Sixth Circuit, as well as in other circuits, held that turnover actions are noncore when a bona fide dispute exists as to the debt. See e.g., In re United Sec. & Commc'ns., 93 B.R. at 958–59; In re Jamuna Real Estate, 357 B.R. at 333–34. Courts followed this rule because if all turnover actions are deemed core, any action to collect on an account, contract, or other similar common law or state law action could be pled in turnover language and deemed core, resulting in an impermissible grant of authority to bankruptcy judges. In re United Sec. & Commc'ns., 93 B.R. at 958–59; see also Stern, 131 S. Ct. at 2608. Therefore, even though a state law breach of contract claim can be pled in turnover language, such an action remains "a step away from a true § 542 turnover proceeding and, therefore, does not constitute a core proceeding." In re United Sec. & Commc'ns., 93 B.R. at 958. For example, in In re Jamuna Real Estate, a "turnover" action was deemed noncore when brought against defendants to recover a disputed debt. 357 B.R. at 334. While most cases after Stern have determined that turnover actions are core, factual disputes regarding the existence or amount of a liability did not exist in those cases. Therefore, when a genuine issue of material fact exists as to the existence or amount of a debt, the claim is not a traditional turnover action and is noncore.

In contrast to the prior paragraph, the Supreme Court's decision in Stern arguably mandates that all turnover actions be deemed statutorily core (but a bankruptcy judge may still be constitutionally prohibited from entering a final order in a statutorily core action).[1] In Stern, the Supreme Court was deciding whether a counterclaim for tortious interference within a bankruptcy case was core. Stern, 131 S. Ct. at 2609. A party in Stern argued that certain actions fall within core categories under § 157, but still do not "arise under" or "arise in" a bankruptcy case, and instead are only "related to" bankruptcy. Therefore, it was argued, even though the

---

[1] Such a reading of Stern is somewhat strengthened by the numerous post-Stern cases deciding that actions for turnover are core. However, as noted above, the post-Stern cases are distinguishable from the current case.

counterclaim for tortious interference was "core" under § 157(b)(2)(C),[2] because it was a state-law claim that did not "arise in" or "arise under" the bankruptcy code, and instead was only "related to" the bankruptcy, it should be classified as noncore. The Supreme Court rejected this view, noting that it would be an "oxymoron" to claim that a "'core' bankruptcy proceeding [is] merely 'related to' a bankruptcy case," and therefore counter-claims in a bankruptcy case are core. Stern, 131 S. Ct. at 2605.[3] Using the same reasoning, one could argue that all turnover actions should be considered "core" under § 157(b)(2)(E) because it would be an "oxymoron" to decide that statutorily core turnover actions are only "related to" bankruptcy. However, a claim of turnover in the bankruptcy context is a "term of art" only referring to "debts which are matured, payable on demand, or payable on order." Dayton Title Agency, Inc. v. Phila. Indem. Ins. Co. (In re Dayton Title Agency, Inc.), 264 B.R. 880, 883 (Bankr. S.D. Ohio 2000); In re Jamuna Real Estate, 357 B.R. at 333 ("Turnover under § 542 of the Code is not intended as a remedy to determine disputed rights of parties to property. Rather, it is intended as a remedy to obtain what is acknowledged to be property of the bankruptcy estate." (internal quotation marks omitted) (citing 2045 Wheatsheaf Assocs. v. United States (In re 2045 Wheatsheaf Assocs.), 1998 WL 910228, at *10 (Bankr. E.D. Pa. 1998)). Therefore, when "an adversary proceeding presents a bona fide dispute as to liability, the matter cannot be viewed as a turnover proceeding under 28 U.S.C. § 157(b)(2)(E)." In re Dayton Title Agency, 264 B.R. at 883. Because counterclaims do not have a special bankruptcy meaning under § 157(b)(2)(C), all counterclaims are statutorily core. See Stern, 131 S. Ct. at 2605. However, turnover proceedings in the bankruptcy context only refer to a specific type of proceeding, so an action, even if couched in turnover language, may seek to do more than a traditional bankruptcy turnover claim, making such an action noncore. In re Dayton Title Agency, 264 B.R. at 883.[4]

In the current case, Defendants strongly oppose Trustee's claims that they assumed, converted, or entered into the Note and Maintenance Agreement with Debtor after the Plaza foreclosure. Genuine issues of material fact exist as to whether Defendants owe money to Trustee. The current case is very similar to In re Jamuna Real Estate, where the defendants disputed that they wrongfully transferred money from a bankrupt debtor to themselves and the court noted that "[a]t this stage in the litigation, the Court does not know whether the funds sought to be recovered are (or are not) estate property." 357 B.R. at 334. Therefore, a bona fide issue was present as to the existence and amount of any debt, making the claims noncore. Id. Similarly, at the current stage in this proceeding, this court cannot determine whether or not Defendants owe money to Trustee. Therefore, the current action does not fall within the traditional bankruptcy definition of a turnover action. Additionally, Defendants have not filed a claim in the bankruptcy case, meaning that the disputed debt will not be determined during the

---

[2] 28 U.S.C. § 157(b)(2)(C) deems that "counterclaims by the estate against persons filing claims against the estate" are core matters.

[3] The Supreme Court then went on to determine that even though the counterclaim was core under the bankruptcy code, a bankruptcy judge is nonetheless constitutionally prohibited from entering a final judgment.

[4] Based on Stern, an argument could be made that actions falling within the literal wording of a catchall provision, such as § 157(b)(2)(O), should be deemed statutorily core. However, the extremely broad wording of § 157(b)(2)(O), coupled with Congressional intent of § 157 to combat the constitutional problems raised by the Supreme Court in Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982), lead this court to conclude that actions which do not "arise in" or "arise under" the bankruptcy code, but nonetheless come within the literal wording of § 157(b)(2)(O), are noncore. See In re United Sec. & Commc'ns., 93 B.R. at 957–58.

normal bankruptcy claims allowance process. Based on the above, Trustee's turnover action is noncore.

Unlike subject matter jurisdiction, which cannot be consented to, a party may consent to a bankruptcy court entering final judgment on a noncore claim. See In re Wolverine Radio, 930 F.2d at 1137–38; Transamerica Auto. Fin. Corp. v. Artibee (In re PAL Nissan, Inc.), 126 B.R. 966, 970–71 (Bankr. W.D. Mich. 1991); Tolliver v. Bank of Am. (In re Tolliver), 464 B.R. 720, 734 (E.D. Ky. 2012) (holding that, even after Stern, parties remain able to consent to a bankruptcy court entering final judgment in noncore matters related to a bankruptcy case). Consent need not be explicit, as the Sixth Circuit, in dicta, determined that "the absence of a timely objection to the bankruptcy court's jurisdiction constitutes implied consent to the resolution of the controversy." DuVoisin v. Foster (In re S. Indus. Banking Corp.), 809 F.2d 329, 331 (6th Cir. 1987). In In re Southern Industries Banking, the Sixth Circuit favorably cited Doyle v. Paolino (In re Energy Savings Center, Inc.), 54 B.R. 100, 102 (Bankr. E.D. Pa. 1985), a Pennsylvania case that decided that "[i]n the absence of an objection to [bankruptcy] jurisdiction, parties in a dispute related to a proceeding under title 11 of the United States Code are deemed to consent to [the court's] jurisdiction to resolve the controversy." In 1991, the Sixth Circuit held, this time no longer in dicta, that a party implicitly consented to bankruptcy court jurisdiction when they submitted a legal brief making numerous legal arguments but never objected to bankruptcy jurisdiction. Cain P'ship, Ltd. v. Pioneer Inv. Servs. Co. (In re Pioneer Inv. Servs. Co.), 946 F.2d 445, 450 (6th Cir. 1991). Courts outside the Sixth Circuit also hold that a party implicitly consents to bankruptcy court jurisdiction if he fails to timely object. See, e.g., Wellness Intern. Network, Ltd. v. Sharif, 727 F.3d 751, 762 (7th Cir. 2013) (holding that a party cannot raise a core/noncore argument on appeal when the issue was not discussed in the district court); In re G.S.F. Corp., 938 F.2d 1467, 1477 (1st Cir. 1991) ("Nor is it necessary that consent be explicit. Rather, implied consent will suffice."); Mann v. Alexander Dawson Inc. (In re Mann), 907 F.2d 923, 926 (9th Cir. 1990) (holding that a party consented to a bankruptcy court entering final judgment in a noncore related action when documents were filed in the bankruptcy court that did not object to jurisdiction); Men's Sportswear, Inc. v. Sasson Jeans, Inc. (In re Men's Sportswear, Inc.), 834 F.2d 1134, 1138 (2d Cir. 1987) (holding that parties consented to bankruptcy jurisdiction when jurisdiction was not contested until after the bankruptcy court decision); Price v. Lehtinen (In re Lehtinen), 332 B.R. 404, 410 (B.A.P. 9th Cir. 2005) (holding that a party could not object to bankruptcy jurisdiction on appeal when they implicitly consented to bankruptcy court jurisdiction by not objecting to jurisdiction in district court); Alloy Metal Wire Works, Inc. v. Associated Screw & Mfg. Co. (In re Alloy Metal Wire Works, Inc.), 52 B.R. 39, 40 (E.D. Pa. 1985) (holding that the parties "implicitly consented to [bankruptcy] jurisdiction by failing to raise a timely objection"). Once parties have consented to bankruptcy jurisdiction, either expressly or implicitly, the noncore related proceeding "functionally has the same effect as a core proceeding, permitting the bankruptcy court to entertain jurisdiction over the matter and to enter a final judgment, order or decree." In re S. Indus. Banking, 809 F.2d at 331.

In the current case, Trustee's Complaint states that "[t]his adversary proceeding . . . is core." Defendants, on the other hand, have not explicitly consented to bankruptcy jurisdiction, but have not objected to bankruptcy jurisdiction either. Because Defendants have filed two separate motions addressing the merits of Trustee's complaint, neither of which raises a jurisdictional objection, this court finds that Defendants have waived any jurisdictional objection

11

they may have had to Trustee's noncore claims. See id.; In re Pioneer Inv. Servs., 946 F.2d at 450. Therefore, this court will enter final judgment on Trustee's four noncore claims, essentially treating those claims as if they were core.

In light of the above analysis, Trustee's claim for the recovery of unauthorized post-petition transactions is a core claim and the bankruptcy judge may enter final judgment because it does not have Stern implications. Additionally, Trustee's other four actions are noncore, but as Trustee and Defendants have consented to bankruptcy jurisdiction, this court will enter final judgment on each claim.

This leads to a puzzling result. In core, Stern-type matters, the bankruptcy court cannot enter final judgments and the parties cannot waive the defect, even though these core matters are more central to the case and the bankruptcy code. Waldman, 698 F.3d at 922. In noncore matters, which are less central to the bankruptcy process, the parties can waive a jurisdictional objection and the bankruptcy court can enter final judgments. Harmonizing the divergent lines of bankruptcy jurisdiction lies beyond the ken of the court.

## II. Motion to Dismiss

To avoid dismissal under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (holding that a complaint must contain more than "naked assertions" without "factual enhancement"); 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B., 2013 WL 4081909, at *2 (6th Cir. 2013) ("[T]he sufficiency of a complaint turns on its 'factual content,' requiring the plaintiff to plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." (internal citation omitted)). "The reviewing court accepts the allegations as not only true, but also views them in the light most favorable to the plaintiffs." Silagy v. Protz (In re Protz), 2012 WL 5898925, at *1 (Bankr. N.D. Ohio 2012) (citing Gold v. Deloitte & Touche LLP (In re NM Holdings Co., LLC), 622 F.3d 613, 618 (6th Cir. 2010)).

### a. Defendants' Argument that Trustee's Complaint Fails to Satisfy Heightened Pleading Requirements

For each of Trustee's five claims, Defendants argue that Trustee's pleadings fail to meet the standards set by Twombly, 550 U.S. 544, and Iqbal, 556 U.S. 662, required to survive a motion to dismiss. Defendants argue that Trustee has failed to produce any evidence that raises a plausible inference supporting Trustee's claims. The court, in light of the motion to dismiss standard, will evaluate each of Trustee's claims to determine whether the complaint contains sufficient allegations and factual information. Before discussing each claim, the court will briefly review Trustee's supporting evidence, which were discussed earlier in the "Facts" section.

To support the existence of the Note, Trustee provides the Snow Email stating that after BBC's default, "the new buyer [of the Plaza] is required to pay off [Debtor's] loan." The Snow

Email also notes that Debtor "is expecting $750,000 within the next 60 days." The Snow Notes state that the new purchaser of the Plaza will assume Debtor's loan, including interest payments. Trustee also alleges the existence of a Maintenance Agreement originally between Double M and Defendants. To support the Maintenance Agreement, Trustee provides an invoice from Double M to Defendants dated March 31, 2011. Trustee also provides another invoice from Debtor's wife to Defendants, billing for the same work over the same period of time. Trustee also presents banking information showing an October 24, 2011 transfer from Defendants to Debtor for $25,000. Based on the evidence, Trustee makes a number of additional allegations discussed earlier in this opinion. When viewing Trustee's allegations and supporting evidence in the manner most favorable to Trustee, this court finds Trustee's allegations are sufficiently supported to survive Defendants' motion to dismiss. This court finds that Trustee has provided enough factual content allowing this court to make plausible inferences that Defendants either assumed, converted, or entered into a new Note and Maintenance Agreement with Debtor, and that liability may follow.

### i. Prohibited Post-petition Transactions

Trustee's first claim is that Defendants engaged in a prohibited post-petition transfer under § 549 of the bankruptcy code. In order to state a claim under § 549, the plaintiff must show "a post-petition transfer of property of the estate that occur[ed] after commencement of the case and is not authorized by the Bankruptcy Code or by the Court." <u>Guinn v. Oakwood Props., Inc. (In re Oakwood Mkts., Inc.)</u>, 203 F.3d 406, 409 (6th Cir. 2000) (emphasis omitted).

Trustee has sufficiently pled a claim to survive dismissal, as the information Trustee provided are the specific allegations supported by facts required by <u>Iqbal</u>, not "naked assertions" without "factual enhancement." 556 U.S. at 678. Relating to the specific § 549 claim, Trustee has alleged transactions occurring after the petition date involving property that should be property of the bankruptcy estate. Trustee has sufficiently alleged the existence of the Note and Maintenance Agreement, each of which could plausibly lead to post-petition transfers between Defendants and Debtor. Trustee has also shown a $25,000 wire transfer between Defendants and Debtor occurring in November of 2011, which is after the bankruptcy petition. Neither the bankruptcy code nor this court approved the transfers Trustee alleges. Therefore, Trustee has sufficiently pled a claim for a prohibited post-petition transaction under § 549 of the bankruptcy code.

### ii. Refusal to Turn Over Property of the Estate

Trustee's second claim against Defendants is for turnover. Section 542 of the bankruptcy code lists the statutory requirements for a turnover action. The Bankruptcy Appellate Panel for the Sixth Circuit has summarized what the Trustee must show as follows:

> (1) [T]hat the property is or was in the possession, custody or control of an entity during the pendency of the case, (2) that the property may be used by the trustee in accordance with § 363 or exempted by the debtor under § 522; and (3) that the property has more than inconsequential value or benefit to the estate

13

Bailey v. Suhar (In re Bailey), 380 B.R. 486, 490 (B.A.P. 6th Cir. 2008).

As noted above, Trustee has sufficiently pled the existence of the Note and Maintenance Agreement. Because the bankruptcy estate has not received assets associated with the Note or Maintenance Agreement, a plausible inference is that Defendants remain in possession of the assets, satisfying element one. The second element is satisfied as the assets, if given to Trustee, would be used to pay creditors. Finally, the value of the Note and Maintenance Agreement are material to the bankruptcy estate. Trustee has sufficiently pled an action for turnover under § 542 of the bankruptcy code. Consequently, Defendants' motion to dismiss Trustee's turnover claim is denied.

### iii. Unjust Enrichment

Trustee's third claim is for unjust enrichment. The elements of an unjust enrichment claim are as follows: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew of such a benefit; and (3) defendant retained the benefit under circumstances that would be unjust to do so without payment." WCI Steel, Inc. v. Seaway Marine Transp. (In re WCI Steel, Inc.), 344 B.R. 838, 850–51 (Bankr. N.D. Ohio 2005) (holding that retaining money received as payment on a general unsecured claim, when less would have been received by the party under bankruptcy, satisfies the third element of an unjust enrichment claim because the property should be distributed in accordance with the bankruptcy code).

After accepting Trustee's allegations as true, a sufficient case for unjust enrichment has been pled. Because Trustee has not received any funds associated with the Note, a plausible inference is that Debtor forgave the Note, in whole or in part, to Defendants. Trustee has also specifically alleged that Defendants were aware that Debtor forgave a portion of their debts. Finally, based on Debtor's financial and legal problems, as well as the commencement of the bankruptcy case, it would be unjust for Defendants to retain the benefit conferred upon them instead of having the debt paid to the bankruptcy estate and distributed to creditors under the bankruptcy code. See id. Therefore, Defendants' motion to dismiss Trustee's claim of unjust enrichment is denied.

### iv. Conversion of Property of the Estate

Trustee's fourth claim is for the improper conversion of property of the Estate. In order to survive a motion to dismiss, Trustee must demonstrate the following:

> (1) that the plaintiff owned or had a right to possess the subject property at the time of the alleged conversion; (2) that the defendant's alleged conversion was the result of a wrongful act or disposition of the plaintiff's property rights; and (3) that damage to the plaintiff occurred as a result of the alleged conversion.

CMEA Title Agency v. Little (In re Little), 335 B.R. 376, 386 (Bankr. N.D. Ohio 2005).

After accepting the Trustee's allegations as true, a sufficient case for conversion has been pled. Because Debtor's property becomes property of the bankruptcy estate at the commencement of the case, Trustee satisfies the first element of a conversion claim. Trustee has also sufficiently alleged the existence of the Note and Maintenance Agreement. As the Note and Maintenance Agreement, or their associated assets, are not within the bankruptcy estate, the court makes the plausible inference that a wrongful act has occurred. Finally, because the conversion, if true, would reduce the amount of assets in the bankruptcy estate, the damage requirement is satisfied. As Trustee has sufficiently pled each element, Defendants' motion to dismiss Trustee's conversion claim is denied.

### v. Civil Conspiracy

Trustee's final claim against Defendants is for civil conspiracy, which requires the Trustee to prove: "(1) a malicious combination; (2) [of] two or more persons; (3) [an] injury to person or property; and (4) [the] existence of an unlawful act independent from the actual conspiracy." In re Nat'l Century Fin. Enters., Inc., 504 F. Supp. 2d 287, 326 (S.D. Ohio 2007).

After accepting Trustee's allegations as true, Trustee has sufficiently pled a civil conspiracy claim. For the first element, Trustee has alleged a plausible claim that Debtor and Defendants acted together to wrongfully conceal the Note, as Trustee has not yet received any payments associated with the Note and the Note was removed from Debtor's personal financial statements sometime between August, 2010 and March, 2011. Additionally, the invoice under the Maintenance Agreement first issued by Double M, and the same invoice later being issued by Debtor's wife, supports Trustee's argument that Debtor and Defendants attempted to hide assets from the bankruptcy estate. The involvement of Debtor and Defendants satisfies the two or more persons requirement. The injury element is satisfied because Trustee has fewer assets to distribute between creditors. The final element is satisfied when Trustee adequately pled claims for a prohibited post-petition transaction, refusal to turn over property of the estate, unjust enrichment, and conversion. Defendants' motion to dismiss Trustee's civil conspiracy claim is denied.

### b. Defendants' Additional Arguments Against Trustee's Claims

Even though Trustee has sufficiently pled facts and related inferences necessary to survive Defendants' motion to dismiss, Defendants' other arguments may still result in a court granting dismissal. See Barney v. PNC Bank, Nat'l Ass'n (In re Barney), 714 F.3d 920, 925 (6th Cir. 2013). Defendants' three arguments, in addition to the insufficient pleadings discussed above, are: (1) the statute of frauds requires a writing; (2) the Plaza foreclosure sale eliminated any encumbrances on the Plaza so Defendants could not assume a contract that no longer existed; and (3) Debtor has nothing of value he could give to Defendants to serve as consideration for any new contractual agreements. The court finds that each of Defendants' additional arguments are insufficient to grant dismissal. The court will evaluate each in turn.

### i. Statute of Frauds

Defendants argue that the statute of frauds requires a writing in the current circumstance, and because no writing has been provided, Defendants are entitled to judgment as a matter of law. See O.R.C. § 1335.05. Trustee counters with two arguments: (1) A writing is not required because the agreement between Defendants and Debtor is not the type of contract where a writing is needed; or (2) a writing is not required because the contract could potentially be completed within one year.

Trustee and Defendants agree that the statute of frauds does not require a written contract for primary obligations, but is necessary to enforce secondary suretyship obligations. Crawford v. Edison, 45 Ohio St. 239, 245 (1887). To determine if a contract is a primary obligation, courts in Ohio apply the "leading object" test, which holds that an obligation is primary if the main purpose of the promise is pecuniary benefit. Hughes v. Miner, 15 Ohio App.3d 141, 142 (Ohio App. 11th 1984); Bond v. Phillips, 2010 WL 4683709, at *3 (Ohio App. 6th 2010). A secondary suretyship, on the other hand, occurs when a secondary obligor agrees to answer for the primary obligor's debts should he fails to pay, but the secondary obligor's purpose must not be his own pecuniary interest. Commercial Money Ctr., Inc. v. Ill. Union Ins. Co., 508 F.3d 327, 338 (6th Cir. 2007); Bond, 2010 WL 4683709, at *3. Defendants argue that Trustee has not pled a plausible reason why the Note and Maintenance Agreement would be in Defendants' pecuniary interest, and therefore a writing is required. Trustee argues that Defendants received pecuniary benefit through Debtor's assistance with the Plaza foreclosure, or potentially some other type of consideration, making the contract a primary obligation where a writing is not required.

Taking all of Trustee's factual allegations as true, the court finds that granting Defendants' motion for dismissal is not appropriate, as the contracts Trustee alleges are plausibly primary in nature. Trustee has sufficiently pled the existence of the Note and Maintenance Agreement. The existence of such obligations support the inference that Defendants would not agree to pay Debtor $1,000,000 without receiving some pecuniary benefit in return. Therefore, the obligations between Defendants and Debtor are plausibly primary in nature and dismissal is inappropriate.

Even if the contracts are secondary in nature, making the statute of frauds applicable, Defendants are still not entitled to dismissal. A contract that cannot possibly be completed within one year falls within the statute of frauds. Sherman v. Haines, 652 N.E.2d 698, 700 (Ohio 1995). However, a contract that could be completed within one year, no matter how unlikely, falls outside the statute of frauds. Id. Defendants argue that the time for performance of the Note is eighteen months, and because such a period is greater than one year, the statute of frauds requires a writing. Trustee counters by arguing that the time period for the Note is unclear, ranging from under one year to eighteen months. To support this position, Trustee cites the Snow Email, suggesting that the majority of the Note would be quickly paid, leading to the inference that completion of payments on the Note may occur within one year. When taking the facts and allegations in the light most favorable to Trustee, Trustee has sufficiently pled facts illustrating that the Note could possibly be completed in under one year, making the statute of frauds inapplicable. Based on the reasons above, Defendants are not entitled to dismissal of Trustee's claims based on a defense premised on the statute of frauds

16

### ii. The Foreclosure Sale Cut Off Debtor's Interest in the Plaza

Defendants' next defense is that the Plaza foreclosure sale cut-off Debtor's interest in the Plaza. Therefore, Defendants argue, they could not assume the Note or Maintenance Agreement because they no longer existed. However, Trustee's theory of recovery is not based only on Defendants assuming a previously existing contract. Instead, the complaint includes theories that Defendants converted the previously existing Note and Maintenance Agreement into other assets or entered into a new Note and Maintenance Agreement that were similar to the contracts in existence before the Plaza foreclosure. Because Trustee has sufficiently pled the existence of the Note and Maintenance Agreement, and the court is required to make all plausible inferences in favor of the Trustee at this point in the litigation, this court determines that Trustee has sufficiently pled the existence of contracts between Defendants and Debtor that were not eliminated by the Plaza foreclosure.

### iii. Debtor's Lack of Consideration to Defendants

Defendants' final defense is because Debtor had nothing of value to offer Defendants after Debtor's interest in the Plaza was extinguished, it is implausible that Debtor could offer anything sufficient to entice Defendants to assume, convert, or enter into the Note and Maintenance Agreement. Therefore, Defendants argue, Trustee's claims should be dismissed because a plausible inference cannot be made that Debtor gave consideration for any contract with Defendants, and a contract without consideration is unenforceable. Consideration is defined as "a benefit to the promisor or a detriment to the promisee." Busch Bros. Elevator Co., Inc. v. Unit Bldg. Servs., 942 N.E.2d 404, 406 (Ohio App. 1st 2010). After making all plausible inferences in favor of the Trustee, this court makes the plausible inference that some type of consideration was transferred between Debtor and Defendants. For what reason, other than valuable consideration, would Defendants enter into a contract guaranteeing Debtor payment on the Note? While Trustee is not certain of the exact consideration given, Trustee need not be certain at this stage in the litigation; all that is necessary is a plausible inference. Defendants are not entitled to dismissal based on a lack of consideration.

### Conclusion

Based on the above, the court finds that Trustee has sufficiently pled a claim for a prohibited post-petition transaction in order to survive a motion to dismiss. Because a prohibited post-petition transfer is a core proceeding, Defendants' motion to dismiss the prohibited post-petition transaction is **DENIED**.

Trustee's other four claims are noncore. However, both Trustee and Defendants have consented to this court entering final judgment on the noncore claims. Therefore, Defendants' motion to dismiss Trustee's claims for turnover, unjust enrichment, conversion, and civil conspiracy are **DENIED**.

An order will be entered simultaneously with this opinion.

# # #

**Service List**:

**Anthony J. DeGirolamo**
Courtyard Centre
Suite 625
116 Cleveland Avenue NW
Canton, OH 44702

**Chrysanthe E Vassiles**
Black McCuskey Souers and Arbaugh
220 Market Ave., South, Suite 1000
Canton, OH 44702

**Gordon D Woolbert, II**
Black, McCuskey, Souers & Arbaugh
220 Market Ave South, Suite 1000
Canton, OH 44702

**Douglas A Dymarkowski**
5431 Main Street
Sylvania, OH 43560

**Marvin A Robon**
Barkan & Robon Ltd.
1701 Woodlands Drive
Suite 100
Maumee, OH 43537-4092

**Philip A. Cargnino**
7855 Brint Rd.
Sylvania, OH 43560

**Richard K Stovall**
Allen Kuehnle Stovall & Neuman LLP
17 South High Street, Suite 1220
Columbus, OH 43215

**Double M. LTD**
c/o Centrus Group, Liquidating Agent
via Robert L. Cohen,
Statutory Agent for Service of Process
1653 Merriman Road, Suite 211
Akron, OH 44313

**Susan L Rhiel**
394 E Town St
Columbus, OH 43215